IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEENA BEAUREGARD,

                Plaintiff,                Case No. 3:07 CV 1740

-vs-

                                          MEMORANDUM OPINION

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

KATZ, J.

This matter is before the Court on the Report and Recommendation ("R&R") of the United States Magistrate Judge Kenneth S. McHargh (Doc. 23), Defendant Commissioner of Social Security's ("Commissioner") objection to the R&R (Doc. 24), and the reply of Plaintiff Deena Beauregard ("Plaintiff") (Doc. 27). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of those of the Magistrate's findings to which Commissioner objects.

**I. Background**

The relevant background for this case as described in the June 5, 2008 R&R of Magistrate Judge McHargh (Doc. 23), is accurate and hereby incorporated as follows:

> **I. PROCEDURAL HISTORY**
>
> On June 2 and June 24, 2003, Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits, respectively, alleging a disability onset date of March 18, 2003 due to limitations related to diabetes and lower back and heart problems. On June 28, 2006, Administrative Law Judge ("ALJ") Richard C. VerWiebe determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work and, therefore, was not disabled (Tr. 20). On appeal, Plaintiff claims the ALJ's determination is not supported by substantial evidence.

## II. EVIDENCE
### A. Personal and Vocational Evidence

Born on November 5, 1961 (age 44 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416. 963. Plaintiff last completed the tenth grade and later obtained a GED (Tr. 88, 313). Plaintiff has worked as a certified nurse assistant ("CNA") and also has past relevant work as a cook and dietary aide (Tr. 203, 313, 322).

### B. Medical Evidence
#### 1. Physical Impairments

Plaintiff injured her back at work in 1993 and again in 2000 (Tr. 202). James D. Brue, M.D., treated her for chronic lower back complaints since the late 1990s (Tr. 191). During the period that Plaintiff was still working, she reported having good and bad days. Physical examinations frequently revealed tenderness in the lower back, but straight-leg raising tests were normal, and her reflexes and sensation were intact (Tr. 187-92). In October 2001 and January 2002, Dr. Brue noted that Plaintiff was "doing pretty well," with good range of motion and normal reflexes (Tr. 185-86). Plaintiff indicated that when her light duty nursing position was eliminated, and she was required to do more heavy lifting at her nursing job, her back symptoms worsened (Tr. 183). Dr. Brue placed her on permanent restrictions of lifting no more than 20 pounds, and bending no more than occasionally up to 45 degrees (Tr. 173-74).

Plaintiff was hospitalized on March 17, 2003 due to cocaine abuse, acute respiratory failure, and ischemic heart disease (Tr. 126). The cause of the respiratory failure was diagnosed as pulmonary edema, and she underwent cardiac catheterization (Tr. 127). Mohammed M. Maaieh, M.D., the attending physician, concluded that cocaine abuse had precipitated the respiratory failure, and that Plaintiff had mild, non-critical coronary artery disease, with moderately severe dysfunction of the left ventricle (Tr. 136). He noted that Plaintiff also had a history of diabetes (Tr. 134).

On May 7, 2003, after again experiencing respiratory distress, Plaintiff was admitted to the hospital with congestive heart failure and uncontrolled diabetes (Tr. 144, 147). A chest x-ray was normal (Tr. 152). Plaintiff was given insulin, and discharged when her blood sugar stabilized and her shortness of breath cleared (Tr. 144, 146, 149). At a follow-up examination on July 8, 2003, Plaintiff told Dr. Maaieh that she continued to experience shortness of breath (Tr. 156). Dr. Maaieh increased her medications (Tr. 158).

On August 15, 2003, Tracey O'Neal, D.O., Plaintiff's primary care physician, completed a medical report on her physical condition (Tr. 194). Dr. O'Neal noted diagnoses of heart and

2

hypothyroid problems, diabetes, depression with anxiety, substance abuse, and iron deficient anemia (Id.). She also noted that Plaintiff had a long history of non-compliance with medication and follow-up, and that her substance abuse interfered with her medical recovery (Tr. 194-05). Dr. O'Neal did not anticipate that Plaintiff would require future surgical or clinical intervention (Tr. 194). Dr. O'Neal stated that because of her heart condition and poor exercise tolerance, Plaintiff was probably unable to perform prolonged physical activity, but could sit for long periods of time (Tr. 195).

Sarah B. Long, M.D., reviewed the evidence for the Ohio Disability Determination Service ("DDS") on September 20, 2003 (Tr. 227-35). Dr. Long concluded that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for no more than 15 minutes at a time, for a total of two hours in an eight-hour work day (Tr. 228). Dr. Long opined that Plaintiff should not stoop, kneel, crouch, or crawl more than occasionally; should avoid ladders, ropes, and scaffolds; and should avoid moderate exposure to fumes, odors, dusts, and gases (Tr. 229-31). Dr. Long's opinion was affirmed on January 7, 2004, by a second physician, Eli N. Perencevich, D.O. (Tr. 234).

Plaintiff was admitted to the Medical College of Ohio on February 9, 2004 after complaining of chest pain (Tr. 242-62). Plaintiff was diagnosed with non-cardiac chest pain, and an exacerbation of her chronic obstructive pulmonary disease ("COPD") (Tr. 244-45). Plaintiff was prescribed a nebulizer for use at home (Tr. 244). A physical examination revealed that Plaintiff was in mild distress, her heart condition was normal, and her lung functions were decreased (Tr. 246, 252, 254). Plaintiff had no musculoskeletal problems and a chest x-ray was normal (Tr. 252, 255).

On February 16, 2004, Plaintiff returned to Dr. Brue complaining of back pain that she rated at a five to six out of ten (Tr. 269). A physical examination revealed limited range of motion, but no acute muscle spasm (Id.). Neurological and reflex examinations were normal (Id.). On May 19, 2004, Dr. Brue opined that Plaintiff could not lift more than 20 pounds, and could only occasionally bend to 20 to 45 degrees (Tr. 268). On August 18, 2004, Plaintiff again reported her pain level at a five to six, but Dr. Brue found that although she still had limited range of motion, she moved about fairly well (Tr. 267). He continued her permanent work restrictions and indicated that her lower back strain was controlled with medication (Id.). On December 17, 2004, Plaintiff told Dr. Brue that her symptoms were about the same, although she rated her pain at an eight (Tr. 266). A physical examination revealed that her vital signs

3

were within normal limits (Id.). Dr. Brue indicated that a dose of Ultram every four to six hours seemed to control her pain fairly well without causing excessive sedation or sleepiness (Id.).

Plaintiff reported a "really bad day" on March 16, 2005, and Dr. Brue noted that she moved more stiffly than normal (Tr. 265). On June 20, 2005, Plaintiff reported that she normally did pretty well, and her pain was usually at a three to four out of ten (Tr. 264). On September 14, 2005, Dr. Brue noted that the range of motion in her back was mildly restricted (Tr. 263). Although Plaintiff rated her pain at an eight, Dr. Brue observed that she moved freely about the room (Id.). He recommended the same permanent work restrictions (Id.).

Also in 2005, Plaintiff was diagnosed with arthritis in both hands (Tr. 294). An x-ray showed degenerative arthritis more notable at the left hand thumb, index, and long fingers (Id.). An examination by Dr. Brue showed definite tenderness and pain with movement of the fingers, but no swelling (Tr. 264).

### 2. Mental Impairments

K. Roger Johnson, M.Ed., performed a consultative psychological examination of Plaintiff on September 18, 2003 (Tr. 202). Plaintiff told him that she had never received psychological or psychiatric treatment, but her family physician prescribed the anti-depressant Prozac (Tr. 203). Plaintiff informed Mr. Johnson that she had been fired from her job as a CNA because of a positive drug test (Tr. 203). She reported that her mood was "usually pretty good," that she did not like to be around other people, and got sad "sometimes" (Id.). Mr. Johnson found that Plaintiff's speech was clear, her thought patterns were relevant and coherent, and there were no signs of bizarre, obsessive, compulsive, or delusional thinking (Tr. 203, 204). Plaintiff displayed minimal signs of depression (Tr. 203). Plaintiff denied having any suicidal thoughts (Tr. 204). Plaintiff displayed insight into her problems, and her judgment and concentration were adequate (Tr. 204). Mr. Johnson diagnosed her with an adjustment disorder with mixed anxiety and depressed mood, and gave her a score of 70 on the Global Assessment of Functioning ("GAF") scale (Id.). Mr. Johnson concluded that Plaintiff had a normal range of cognitive and memory functioning (Tr. 205). Plaintiff's ability to understand directions and maintain attention for simple repetitive tasks was not impaired (Id.). Mr. Johnson concluded Plaintiff's limitations were more physical than mental (Id.).

On September 25, 2003, Alice Chambly, Psy. D., reviewed the evidence relating to Plaintiff's mental health for the Ohio DDS (Tr. 213-26). Dr. Chambly concluded that Plaintiff had an

4

adjustment disorder which imposed no functional limitations on her ability to perform work-related mental activities (Tr. 216, 223, 225).

On November 19, 2003, Plaintiff presented at Harbor Behavioral Health Care, complaining of anxiety and depression (Tr. 206). Plaintiff maintained that she had experienced depression and anxiety off and on for 15 to 20 years, and had felt consistently depressed for the last five to six years (Id.). Plaintiff reported having a cleaning fetish, washing her hands all day long, and disinfecting remote controls and telephones after guests used them (Id.). Plaintiff cried at least once a day, stayed away from other people's houses because they might be dirty, and often stayed in her room for two to three days at a time (Id.). Plaintiff said that her eating habits were poor, and she ate irregularly (Tr. 207). Plaintiff's sole recreation was watching videos at home (Id.). Plaintiff reported having lost her nursing job in March 2003 because of her health due to "a corporate decision." (Tr. 208). She said that her doctor restricted her to jobs where she could sit for six hours and stand for two, and for that reason, she felt she can no longer work because no one would hire her (Id.). The intake evaluator concluded that Plaintiff's mood was depressed but appropriate; her thought content was appropriate; her thought process was logical; her speech, judgment and memory were normal; her intellect was average; and her insight was partially present (Tr. 209). The evaluator assigned a GAF score of 48 and diagnosed dysthymic disorder (Tr. 210-11). The evaluator recommended group and individual therapy, and a psychiatric evaluation (Id.).

On May 11, 2004, Brett Shaffer, B.A., C.T., of Harbor Behavioral Health indicated that he had met with Plaintiff twice, largely to discuss her living situation (Tr. 236-40). He indicated that Plaintiff had mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning and persistence, concentration and pace, and no episodes of decompensation (Tr. 238). He did not know how often her impairments would cause her to miss work, and did not know whether her mental condition exacerbated her physical symptoms (Tr. 238, 239).

**C. Hearing Testimony**

At the administrative hearing on December 6, 2005, Plaintiff testified that she used a nebulizer four to six times a day for her breathing problems (Tr. 315). Each nebulizer treatment took about 15 minutes (Id.). Shortness of breath also required Plaintiff to lie down about eight times a day, for 30 to 45 minutes each time (Tr. 318-19). Plaintiff also had chronic pain throughout her lower back (Tr. 316). The back pain kept her from sleeping through the night

> (Tr. 319). Plaintiff back and breathing problems kept her from walking more than half a block [sic] (Tr. 316). Plaintiff could lift 10 pounds, stand for 10 to 15 minutes at a time, and could only sit for 15 minutes due to back pain (Tr. 316-17). Plaintiff reported that she cooked quick meals and rested frequently when doing housework (Tr. 319-20).
> 
> Vocational expert ("VE") Joseph A. Havranek also testified at the hearing. The ALJ asked the VE to assume an individual of Plaintiff's age, education and vocational background, who was limited to sedentary work and had to avoid moderate exposure to fumes, dust, and airborne pollutants. (Tr. 324-25). The VE testified that such an individual would be able to perform the jobs of photographic hand mounter (200 to 250 regional jobs), microfilm document preparer (500 regional jobs), and surveillance systems monitor (750 to 1,000 regional jobs) (Tr. 325). The VE testified that if Plaintiff were found fully credible, she would not be able to perform any work due to the combination of her COPD and back problems, especially since her COPD required that she undergo nebulizer treatments four to five times a day for 15 minutes at a time (Tr. 324).

Doc. 23 at 2-10.

Magistrate Judge McHargh recommends that this Court reverse and remand the final decision of the Commissioner denying Plaintiff's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i), 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

Commissioner filed a timely objection to the R&R on June 19, 2008 requesting that this Court not adopt the R&R, but rather affirm the Commissioner's final decision denying Plaintiff's application for benefits. For the following reasons, this Court agrees with the Magistrate Judge's findings that the Commissioner's denial of Plaintiff's application is not supported by substantial evidence and, therefore, hereby adopts the recommendation in full. Doc. 23.

**II. Standard of Review**

    **A. Review of an R&R**

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b). The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of the magistrate judge, to which proper objection is made, and may accept, reject, or modify in whole or in part the findings or recommendations of the magistrate judge. Fed. R. Civ. P. 72.3(b). This Court has reviewed the findings of the Magistrate Judge *de novo*. *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

**B. Disability Standard**

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; *see id.* § 416.905.

**C. Review of Commissioner's Decision**

The standard of review described by the Magistrate Judge is hereby adopted as follows:

> Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id*. Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See*

> *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).
>
> This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

**III. Discussion**

In the instant case, the Magistrate Judge recommended that the decision of the Commissioner be reversed and remanded for further proceedings for lacking support by substantial evidence because the ALJ failed to consider the impact of Plaintiff's credibility regarding the impact of Plaintiff's use of a nebulizer on Plaintiff's ability to work. R&R at 12. The Magistrate Judge also stated that, on remand, it would be appropriate for the ALJ to review Plaintiff's 15 minute standing and/or walking limitation assessed by Dr. Long. *Id.* at 15. The Magistrate Judge concluded that substantial evidence supported the ALJ's determinations that Plaintiff does not have a severe medical impairment, and that Plaintiff could perform the walking and standing requirements of sedentary work. *Id.* at 14, 18.

Commissioner objects, and Plaintiff responds, to the Magistrate Judge's conclusion that the ALJ failed to consider the impact of Plaintiff's use of a nebulizer on Plaintiff's ability to work. Commissioner makes no other objections.

**A. The Magistrate Judge did not err in concluding that the ALJ's decision was not supported by substantial evidence.**

The Magistrate Judge concluded that the ALJ's decision was not supported by substantial evidence because the ALJ failed to consider Plaintiff's credibility regarding the impact of Plaintiff's use of a nebulizer on Plaintiff's ability to work. Plaintiff testified that she uses a nebulizer four to six times per day and that each use takes fifteen minutes. Tr. at 315. Plaintiff

8

uses the nebulizer to control her breathing problem or COPD. *Id.* The ALJ asked the VE whether Plaintiff would be able to perform work if Plaintiff's allegations about the nebulizer were given full credibility. Tr. at 324. The VE responded that Plaintiff would not be able to work due to Plaintiff's frequent use of the nebulizer in combination with Plaintiff's COPD and back pain. *Id.* Although the hearing transcript indicates that the ALJ was aware of Plaintiff's use of a nebulizer, the ALJ's decision failed to assess Plaintiff's credibility with respect to Plaintiff's use of a nebulizer. The ALJ failed to discuss the nebulizer altogether.

The Magistrate Judge and this Court recognize that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999). However, the ALJ has a duty to consider the record as a whole and articulate the rationale underlying the decision. *Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). Furthermore, "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Id*. at 519 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)). Failure to consider the record as a whole undermines the Commissioner's conclusion. *Hurst*, 753 F.2d at 518.

Commissioner makes three arguments to demonstrate that the ALJ's decision should be upheld. First, Commissioner claims that Plaintiff did not "expressly challenge" the ALJ's credibility assessment of Plaintiff. Doc. 24 at 2. Plaintiff counters and claims to have raised the issue by implication in the portion of Plaintiff's brief that argued that the ALJ's decision failed to

9

mention the impact of Plaintiff's use of a nebulizer on Plaintiff's ability to work. Doc. 27 at 2. Notably, the VE testified that Plaintiff would not be able to work due to a nebulizer if Plaintiff's allegations were given "full credibility." Tr. at 324. This Court finds that Plaintiff's challenge to the ALJ's failure to consider the nebulizer sufficiently challenges the ALJ's failure to consider Plaintiff's credibility because the VE's testimony discussed in Plaintiff's brief was directly related to Plaintiff's credibility. The Magistrate Judge properly resolved this issue.

Commissioner's other arguments respond to the Magistrate Judge's conclusion that the ALJ "falied to consider [Plaintiff's] nebulizer prescription and alleged use and resulting impact on her ability to work." Doc. 23 at 12. Commissioner maintains that although the ALJ did not explicitly mention Plaintiff's use of a nebulizer, the ALJ recognized that Plaintiff's shortness of breath constituted a severe impairment which had a significant impact on Plaintiff's ability to perform work-related activities. Doc. 24 at 2. Furthermore, Commissioner argues that the ALJ's reference to Plaintiff's 2004 hospitalization for respiratory problems, incidentally the time Plaintiff was prescribed a nebulizer, demonstrates that the ALJ sufficiently considered the Plaintiff's use of the nebulizer. *Id.*

Commissioner's arguments are not well taken. To begin with, the ALJ's discussion of Plaintiff's shortness of breath does not respond to the vocational limitations that allegedly resulted from Plaintiff's use of a nebulizer four to six times per day for fifteen minutes per use. Tr. 18-19. Neither does it respond to the VE's conclusion that, if given full credibility, Plaintiff's testimony regarding the nebulizer demonstrates that Plaintiff does not have the ability to work. Furthermore, Commissioner's argument that the ALJ implicitly considered the nebulizer by mentioning the February 2004 hospitalization does not respond to the impact of Plaintiff's use of a nebulizer on

10

Plaintiff's ability to work. *See Hurst*, 753 F.2d at 519 (In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation.). The Plaintiff's shortness of breath and hospital records are different from Plaintiff's use of a nebulizer, and the ALJ's decision lacks support by substantial evidence because the ALJ failed to address Plaintiff's credibility relative to the Plaintiff's testimony about the nebulizer.

Lastly, Commissioner argues that the ALJ implicitly assessed Plaintiff's use of the nebulizer when the ALJ evaluated Plaitniff's credibility, including the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and Plaintiff's ability to perform routine activities of daily living. Doc. 24 at 3. Commissioner argues that after implicitly weighing these factors with Plaintiff's testimony that her respiratory condition prevented Plaintiff from engaging in physical activity, the ALJ concluded that Plaintiff's testimony was inconsistent.

Commissioner's argument is not supported by the record. Commissioner relies on the portion of the ALJ's decision in which the ALJ concludes that Plaintiff can perform some daily living activities. Tr. at 20. However, to form this conclusion, the ALJ's decision cites to a portion of Plaintiff's application that does discuss Plaintiff's daily activities, but in no way, not even by implication, relates to Plaintiff's use of a nebulizer four to six times per day for fifteen minutes per use. *See* Tr. at 20, 103-108. As stated in *Young v. Comm'r of Soc. Sec.*, 351 F.Supp. 2d 644, 649 (E.D. Mich. 2004), an ALJ may not "pick and choose" evidence in the record, "relying on some and ignoring others, without offering some rationale for that decision." This Court does not find anything in the ALJ's decision to indicate that the ALJ considered Plaintiff's use of a nebulizer.

None of Commissioner's arguments persuade this Court to uphold the ALJ's decision.

**IV. Conclusion**

For the reasons discussed herein, the Court adopts Report & Recommendation of the Magistrate Judge in its entirety (Doc. 23) and reverses and remands the decision of the Commissioner to the Social Security Administration for proceedings consistent with this opinion.

IT IS SO ORDERED.

                                                  s/ *David A. Katz*
                                                  DAVID A. KATZ
                                                  U. S. DISTRICT JUDGE